**TRUSTEES OF THE ALA–LI-THOGRAPHIC PENSION PLAN, Plaintiff,**

v.

**CRESTWOOD PRINTING CORPORATION Defendant.**

**No. 99 Civ. 4432(CBM).**

United States District Court, S.D. New York.

Jan. 11, 2001.

Ira Cure, Kennedy, Schwartz & Cure, P.C., New York City, for Plaintiff.

Mark S. Mancher, Elliot D. Bernak, Jackson, Lewis, Schnitzler & Krupman, Woodbury, NY, for Defendant.

### MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

Plaintiff, Trustees of the ALA–Lithographic Industry Pension Plan ("IPP"), filed this ERISA action on June 21, 1999 against employer, Crestwood Printing Corporation ("Crestwood"), alleging that Crestwood failed to make obligatory contributions in the amount of approximately $52,796.32 to IPP, in violation of section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, and section 301(a) of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185(a).

Plaintiff now brings a motion *in limine* to exclude evidence concerning the validity or formation of one of the collective bargaining agreements between defendant and the Amalgamated Lithographers of America, Local One ("the union"), Agreement # 3. Plaintiff also seeks to exclude evidence pertaining to the interpretation of one of the other agreements between defendant and the union, the 1997 Memorandum of Agreement ("MOA"). For the reasons that follow, plaintiff's motion *in limine* is DENIED.

## I. BACKGROUND [1]

The union and defendant are parties to a collective bargaining agreement. Pursuant to the collective bargaining agreement, defendant is required to make pension contributions as a percentage of its employees' base pay. The disagreement between the parties involves the calculation of base pay for the purposes of the pension contribution. Plaintiff alleges that base pay includes both regular shift pay and overtime pay. Defendant alleges that base pay includes only regular shift pay. Three agreements between the union and defendant are involved.

### A. The MLA Agreement

The first agreement ("the MLA Agreement"), controlling from July 1, 1994 to June 30, 1997, was a collective bargaining agreement between the union and the Metropolitan Lithographers Association ("MLA"), a multi-employer collective bargaining group of which defendant was a

---

1. The following facts are drawn from the moving papers submitted by both parties on defendant's motion for summary judgment unless otherwise noted.

member. The MLA Agreement *excluded* overtime pay in the base pay calculation.

### B. The 1997 MOA

The second agreement ("the 1997 MOA"), executed in mid-July 1997, was a Memorandum of Agreement executed between union president Patrick LoPresti and defendant's chief executive officer ("CEO") and president Robert Kashan after defendant left the MLA in April 1997. The 1997 MOA stated that "the terms and conditions of employment set forth in the existing collective bargaining agreement by and between the Union and the Employer shall continue in effect." Def.'s Notice of Motion Summ. J., Ex. 4.

Plaintiff asserts that the 1997 MOA's reference to "the existing collective bargaining agreement" referred to an existing agreement plaintiff used with all independent employers (employers who were not members of the MLA) which *included* overtime pay in the base pay calculation. Plaintiff alleges that the 1997 MOA was similar to the MOAs the union prepared for all independent employers and further asserts that LoPresti repeatedly cautioned Kashan that defendant would be required to make contributions on overtime.

Defendant asserts that "the existing collective bargaining agreement" referred to the MLA Agreement, to which defendant had been bound as a member of the MLA, which *excluded* overtime pay from the base pay calculation. Defendant points out that this was the only collective bargaining agreement in existence between the union and defendant at the time the 1997 MOA was signed.

Defendant also argues that the union did not always require independent employers to make pension contributions based on overtime and that Kashan had specifically bargained for an agreement which excluded overtime from the base pay calculation. In support of this argument, defendant submits that Kashan, in addition to being CEO and president of defendant Crestwood, is also CEO of Barton Press ("Barton"), another independent employer. On March 6, 1997, prior to the negotiations regarding defendant Crestwood, Kashan and LoPresti negotiated a Memorandum of Agreement for Barton commencing July 1, 1997 ("the Barton Agreement"). The Barton Agreement provided that Barton would be bound by the independent employer agreement but that it would incorporate the agreements respecting wages and benefits reached between the union and the MLA for the period of July 1, 1997 to June 20, 2000. This meant that Barton's contributions to plaintiff *excluded* overtime pay from the base pay calculation.

Defendant also points out that plaintiff's ledger books from April 1997 to December 1999 do not indicate that defendant was in arrears and do not indicate that defendant was not making full pension contributions.

### C. Agreement # 3

The third agreement, executed in 1999 ("Agreement # 3"), was a formal collective bargaining agreement between the union and defendant for the 1997–2001 period and *included* overtime pay in the base pay calculation. The parties agree that both the union and defendant signed Agreement # 3.

Plaintiff argues that Agreement # 3 is the controlling agreement and is merely the finalized version of the 1997 MOA. Plaintiff asserts that the language in the 1997 MOA referred to a standard independent employer agreement which *included* overtime pay in the base pay calculation. Plaintiff claims that defendant has failed to remit the proper pension contribution as required by Agreement # 3 because defendant has failed to include overtime pay in its pension contributions.

Defendant asserts that the 1997 MOA is the controlling agreement and argues that the language in the 1997 MOA referred to the MLA Agreement which *excluded* overtime pay from the base pay calculation. Defendant asserts that plaintiff com-

menced this action shortly after Agreement # 3 was signed but almost two years after the 1997 MOA was executed.

### D. Defendant's Motion for Summary Judgment

Defendant moved for summary judgment on July 31, 2000 arguing that the 1997 MOA constituted the agreement between the union and defendant and that the 1997 MOA referred to an existing collective bargaining agreement which excluded overtime pay from the base pay calculation. On September 18, 2000, this court denied defendant's motion for summary judgment based upon the finding that the 1997 MOA's language regarding the "existing collective bargaining agreement" was ambiguous.

Defendant argued in its motion for summary judgment that Agreement # 3 was void *ab initio* because Harry Ajamian, the Crestwood officer who signed Agreement # 3 in 1999 without reading it, was under the impression that the document was merely a finalized version of the 1997 MOA. Defendant noted that it is a common union practice to formalize agreements with formal "book format" contracts and that these booklets are often presented to employers some time after the actual agreement is ratified. Defendant alleged that the union representative who presented Agreement # 3 to Ajamian for signing did not represent that the terms of the agreement varied from the 1997 MOA. Defendant, in its opposition to plaintiff's motion *in limine*, now characterizes this sequence of events as constituting the defense of fraud in the execution, a defense that could render Agreement # 3 void.

## II. DISCUSSION

Plaintiff argues that defendant should be precluded from arguing fraud in the execution because this defense was not pleaded as an affirmative defense. Plaintiff also seeks to exclude evidence concerning the validity or formation of Agreement # 3.

Plaintiff argues that defenses based on contract validity and formation: (A) are not cognizable under ERISA § 515 and (B) are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. Plaintiff also argues that defendant's ratification argument is preempted by the NLRA.

### A. WAIVER OF FRAUD IN THE EXECUTION AS AN AFFIRMATIVE DEFENSE

Defendant makes the argument that Agreement # 3 is void *ab initio*. In its motion for summary judgment, defendant argued that Agreement # 3 is void because Ajamian erroneously signed the agreement and because the agreement did not properly supercede the 1997 MOA under New York law. *See* Def's Mem. Supp. Summ. J. at 20–22. Defendant now argues, in its opposition to this motion *in limine*, that Agreement # 3 is void because the union's actions in obtaining Ajamian's signature constituted fraud in the execution.

Plaintiff argues that defendant's defense of fraud in the execution has been waived under Rule 8(c) of the Federal Rules of Civil Procedure because fraud in the execution was not included as an affirmative defense in defendant's answer. Rule 8(c) states, in part: "In pleading to a preceding pleading, a party shall set forth affirmatively ... fraud ..., and any other matter constituting an avoidance or affirmative defense." FED. R. CIV. P. 8(c). Plaintiff also asserts that defendant did not refer to fraud in the execution in its motion for summary judgment and did not list fraud in the execution among its defenses in the parties' joint pre-trial order. *See* FED. R. CIV. P. 16(e) (The final pre-trial "order shall control the subsequent course of action unless modified by a subsequent order."). Plaintiff argues that defendant cannot now aver fraud in the execution on the eve of trial.

This court has discretion, when a party omits a defense, to nevertheless allow the

defense at any time "when justice so requires." Fed. R. Civ. P. 15(a). "The sound exercise of this discretion usually involves the presence or absence of such factors as undue delay, bad faith, undue prejudice to opposing party, or futility of amendment." *Lemelson v. Synergistics Research Corp.*, 669 F.Supp. 642, 647 (S.D.N.Y.1987) (*citing Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir.1977)). This court believes that allowing defendant to argue the defense of fraud in the execution will not result in any undue delay or prejudice to plaintiff. Defendant fully briefed and orally argued in its motion for summary judgment the facts underlying its defense of fraud in the execution and defendant explicitly stated in that motion its belief that these facts rendered Agreement # 3 void. *See* Def.'s Mem. Supp. Summ. J. at 20–22. In the parties' joint pre-trial order, defendant reasserted its argument that Agreement # 3 was void. *See* Joint Pre–Trial Order at 4.

■ This court finds that defendant's recitation of the underlying facts surrounding the signing of Agreement # 3, including the contention that the union did not alert Ajamian to any changes, and defendant's repeated assertions that these facts rendered Agreement # 3 void *ab initio* gave plaintiff sufficient notice of defendant's fraud in the execution argument. *See Williams v. Ashland Engineering Co., Inc.*, 45 F.3d 588, 593 (1st Cir.1995), *rev'd on other grounds, Carpenters Local Union No. 26 v. United States Fidelity & Guaranty Co.*, 215 F.3d 136 (1st Cir.2000) (finding that where Rule 8(c)'s core purpose of safeguarding against unfair surprise and unfair prejudice has been vindicated, failure to plead a defense will not constitute a waiver). Because plaintiff is not unduly prejudiced and because this court finds no evidence of bad faith on the part of defendant, this court will allow defendant to pursue its defense of fraud in the execution.

## B. ERISA § 515

### 1. *Void Versus Voidable*

■ Plaintiff argues that evidence offered to prove that Agreement # 3 is voidable should be excluded because the argument that a contract is voidable is not a recognizable defense in an ERISA § 515 action. In making its argument, plaintiff asks that all evidence prior to the moment Ajamian signed Agreement # 3 be excluded. This court agrees that evidence offered to prove that Agreement # 3 is voidable must be excluded under ERISA § 515. However, plaintiff's request to exclude all evidence prior to the signing of Agreement # 3 must be denied because ERISA § 515 does not preclude the use of such evidence when the purpose is to show that a contract is void.

Congress enacted section 515 of ERISA in order to permit plan trustees to collect delinquent contributions effectively and without regard to defenses that might be asserted regarding the formation of the collective bargaining agreement. *See Benson v. Brower's Moving & Storage*, 907 F.2d 310, 313–14 (2d Cir.1990). The courts have regarded pension and welfare funds in section 515 actions to be in a superior position to unions concerning their right to collect benefit fund contributions. *See Benson*, 907 F.2d at 314. Pension or welfare funds are "entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1149 (7th Cir.1989).

■ It is well-settled that traditional contract defenses are generally not available in suits brought to collect delinquent contributions under ERISA. *See, e.g., Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir.1986). However, the Second Circuit has recognized two defenses which are permitted in section 515 actions: "(1) that the pension contributions themselves are illegal, and

(2) that the collective bargaining agreement is void (not merely voidable)." *Benson,* 907 F.2d at 314. In this case, it is defendant's position that due to fraud in the execution Agreement # 3 is void.[2] A contract is deemed void "where there is a misrepresentation as to the character or essential terms of a proposed contract, and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28 (2d Cir.1997).

Because the argument that Agreement # 3 is void due to fraud in the execution is a defense allowable in an ERISA § 515 action, evidence showing the manner in which Agreement # 3 was presented may be used to show that the union's actions constituted a misrepresentation which denied defendant a reasonable opportunity to know the agreement's character and essential terms.

### 2. *Duty to Read Contract Before Signing*

Plaintiff argues that evidence prior to the signing of Agreement # 3 should be excluded because Ajamian had many years experience dealing with the union and had a basic responsibility to review the document before signing it. *See Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 34 (2d Cir.1997); *Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.,* 795 F.2d 1501, 1505 (9th Cir.1986) (a "party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it").

■ To be sure, parties must abide by the basic duty to read a contract before signing. *See Hetchkop,* 116 F.3d at 34. However, whether defendant in this case had the reasonable opportunity to know the character and essential terms of the contract before signing appears to be a question of fact that must be determined at trial. Therefore, this issue does not preclude defendant from presenting evidence in support of its defense of fraud in the execution.

### 3. *Conduct of Union Agents*

Plaintiff also seeks to exclude evidence concerning the conduct of union agents. Plaintiff argues that because this action was brought by a pension plan, and not by a union, defenses based upon the conduct of union agents are not cognizable under ERISA § 515. *See Benson,* 907 F.2d at 313. As discussed above, *Benson* does not preclude defendant from asserting the defense of fraud in the execution. Therefore, defendant may submit evidence of the conduct of union agents which is relevant to this defense.

### 4. *Course of Conduct and Bargaining History*

■ Plaintiff also seeks to exclude extrinsic evidence surrounding the signing of Agreement # 3, such as course of conduct and bargaining history. Plaintiff argues that because the terms of Agreement # 3 are not ambiguous, extrinsic evidence cannot be used to alter its meaning. This court agrees that extrinsic evidence cannot be used to clarify Agreement # 3's language concerning pension contributions because Agreement # 3 is unambiguous on this point. However, extrinsic evidence, such as course of conduct and bargaining history, may be used by defendant in establishing its fraud in the execution defense. *See Teamsters Industrial Employees Welfare Fund v. Rolls–Royce Motor*

---

**2.** Fraud in the execution arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." Uniform Commercial Code § 3–305(2)(c); *see also* Restatement (Second) of Contracts § 163. Fraud in the inducement occurs when a party is induced to assent to something he otherwise would not have. *See* 12 Williston on Contracts § 1488, at 332. The court notes that the defense of fraud in the inducement is not available in an ERISA § 515 action. *See Rozay's Transfer,* 791 F.2d at 773–74.

*Cars, Inc.*, 989 F.2d 132, 138 (3d Cir.1993) ("Although a variety of contract defenses would not preclude the Funds from enforcing their right to collect payments pursuant to the collective bargaining agreement, the Funds are not entitled to enforce a nonexistent contractual obligation."); *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653–54 (2d Cir.1994).

If defendant is successful at trial in showing that Agreement # 3 is void, then this court must look to the 1997 MOA as the contract governing pension contributions. This court ruled, in denying defendant's summary judgment motion, that the language of the 1997 MOA was ambiguous as to which "existing collective bargaining agreement" the 1997 MOA was meant to encompass. *See Trustees of the ALA–Lithographic Pension Plan v. Crestwood Printing Corp.* 113 F.Supp.2d 611, 613 (S.D.N.Y.2000). Defendant must therefore be permitted to present extrinsic evidence to show what agreement the 1997 MOA was meant to encompass. *See Diplomat Envelope Corp.*, 263 N.L.R.B. 525, 536, *enf.*, 760 F.2d 253 (2d Cir.1985) ("Where the alleged agreement reached is ambiguous, extrinsic or parol evidence has relevance in determining whether agreement or a meeting of the minds has been reached.").

## B. EXCLUSIVE JURISDICTION OF NLRB

### 1. *Fraud in the Execution Defense*

Plaintiff argues that this court does not have jurisdiction over defendant's fraud in the execution defense because the argument lies within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). This court disagrees.

It is the general rule that "neither state nor federal courts have jurisdiction over suits directly involving 'activity (which) is arguably subject to § 7 or § 8 of the [NLRA].' " *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (*quoting San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). However, one of the notable exceptions to the NLRB's exclusive jurisdiction over this activity that Congress has carved out is LMRA § 301(a)'s grant of jurisdiction over suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the NLRB.[3] *See Vaca v. Sipes*, 386 U.S. at 179–80, 87 S.Ct. 903 (*citing Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)).

With regard to challenges to the validity of a collective bargaining agreement, the Supreme Court has held that federal courts do not have jurisdiction to determine the validity of a contract under LMRA § 301(a), but rather had jurisdiction only for claims that a contract has been breached. *Textron Lycoming Reciprocating Engine Division, AVCO Corp. v. United Automobile, Aerospace, Agricultural Implement Workers of America*, 523 U.S. 653, 657, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998). However, the *Textron* Court observed in dicta that courts could adjudicate the validity of a contract when the issue was raised as an affirmative defense in a breach of contract action brought under LMRA § 301(a). Thus, to reach the federal court, the suit must arise under LMRA § 301(a).

Plaintiff's complaint alleges violations of ERISA § 515 *and* LMRA § 301(a). This court therefore finds that under *Textron*, this court has jurisdiction to hear defendant's argument that Agreement # 3 is void because of fraud in the execution be-

---

**3.** Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

cause the argument is offered as an affirmative defense to a LMRA § 301(a) claim.

### 2. *Ratification Defense*

Plaintiff also argues that this court lacks jurisdiction to hear defendant's argument that plaintiff and the union ratified defendant's interpretation of the 1997 MOA during the two years after the 1997 MOA was signed and Agreement # 3 was signed. Plaintiff asserts that this argument is preempted by the NLRA because it pertains to the formation of a collective bargaining agreement and is therefore subject to the exclusive jurisdiction of the NLRB. On this basis, plaintiff seeks exclusion of testimonial evidence concerning plaintiff's or the union's actions for the two years between signing the 1997 MOA and Agreement # 3.

As discussed above, plaintiff brought this action under LMRA § 301(a), thus opening the door to district court jurisdiction over defendant's defenses to this action. This court therefore finds that defendant's ratification defense is not preempted and evidence supporting this defense will not be excluded.

### III. CONCLUSION

This court holds that defendant did not waive its fraud in the execution defense and that the defense is not barred by ERISA § 515 and is not preempted by the NLRA. This court also holds that defendant's ratification defense to this LMRA § 301(a) action is not preempted by the NLRA. This court therefore DENIES plaintiff's motion to exclude evidence used to show that Agreement # 3 is void because of fraud in the execution. This court also DENIES plaintiff's motion to exclude extrinsic evidence used to show the meaning of the 1997 MOA.