**Victor ESCOBAR, Plaintiff,**

v.

**The CITY OF NEW YORK, The New York City Police Department, and Raymond W. Kelly, as Commissioner of the New York City Police Department, Det. Edward Jacobowski, Det. Al Arce, and Sgt. Ernest Barelli, Individually, and in their capacity as**

---

agents of the New York City Police Dept., the Honorable Richard Brown, as District Attorney of Queens County, and Gregory Pavlides, Assistant District Attorney, Queens County, Defendants.

No. 05–CV–3030 (ENV)(CLP).

United States District Court, E.D. New York.

Feb. 7, 2011.

John Nicholas Iannuzzi, Iannuzzi & Iannuzzi, New York, NY, for Plaintiff.

Brian Jeremy Farrar, David M. Hazan, New York City Law Department, New York, NY, for Defendants.

### MEMORANDUM & ORDER

VITALIANO, District Judge.

Plaintiff Victor Escobar sues, under 42 U.S.C. §§ 1981, 1983, and 1988, alleging that his constitutional rights were violated by defendants New York City, the New

York City Police Department ("NYPD"), Commissioner Raymond Kelly, Detective Edward Jacobowski, Detective Al Arce, Sergeant Ernest Barelli, District Attorney for Queens County Richard Brown, and Assistant District Attorney for Queens County Gregory Pavlides. All claims against NYPD, Kelly, Brown, Pavlides, Jacobowski, Arce, and Barelli were dismissed pursuant to Orders issued by this Court dated June 25, 2007, December 8, 2008, and February 22, 2010. The City, the sole remaining defendant, now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the outstanding claim. For the reasons set forth below, the Court concludes that plaintiff's claim fails as a matter of law, and, accordingly, grants summary judgment in favor of the City.

## I. BACKGROUND

The following facts are drawn from the complaint and the submissions of the parties on defendant's motion, including the statements of undisputed material facts made pursuant to Local Civil Rule 56.1.[1] The facts are construed, as they must be in the summary judgment context, in the light most favorable to the nonmoving party. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir.2007).

The tale begins on August 20, 2003, the date Escobar alleges that he and his bags containing United States currency were illegally seized by NYPD officers in Queens County. Following arraignment in Queens County Criminal Court, Escobar was indicted on a charge of second degree money laundering under N.Y. Penal Law

§ 470. After a hearing in Supreme Court, the indictment was dismissed because the court found that there was no probable cause for the search of the car or seizure of the money.

On June 22, 2005, Escobar filed this lawsuit alleging violations of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments. The complaint alleged, more concretely, that NYPD has a "seize first, ask questions later" policy which led to his illegal arrest and detention. The instant motion addresses the only remaining cause of action in this case, a *Monell* claim against the City.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir.1995) (internal quotation marks omitted) (emphasis in original). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see, e.g., Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir.2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion. *See, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir.2004); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir.1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record

---

1. For a more detailed discussion of the facts and overall procedural history, please refer to *Escobar v. City of N.Y.*, No. 05–CV–3030, 2010 WL 629828, 2010 U.S. Dist. LEXIS 15142 (E.D.N.Y. Feb. 22, 2010); *Escobar v. City of N.Y.*, No. 05–CV3030, 2009 U.S. Dist. LEXIS 125203 (E.D.N.Y. Oct. 23, 2009); *Escobar v.*

*City of N.Y.*, No. 05–CV–3030, 2008 WL 5157011, 2008 U.S. Dist. LEXIS 99027 (E.D.N.Y. Dec. 8, 2008) and *Escobar v. City of N.Y.*, No. 05–CV–3030, 2007 WL 1827414, 2007 U.S. Dist. LEXIS 45952 (E.D.N.Y. June 25, 2007).

from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. *See George v. Reisdorf Bros., Inc.*, 10–CV–0798, 10–CV–1208, 410 Fed.Appx. 382, 383–84, 2011 WL 326511, at *1, 2011 U.S.App. LEXIS 2296, at *3 (2d Cir. Feb. 3, 2011). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case .... [s]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (internal citations omitted).

## B. *Dismissal of Individual Defendants*

It is well-accepted that if a plaintiff fails to show a constitutional violation by the individual defendant, the related claim against the municipality will be mooted since such a claim is only actionable where some constitutional violation actually occurred in the first instance. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). However, the claims against the individual police officer defendants in this

case were dismissed on procedural grounds for lack of personal jurisdiction. In *Curley v. Village of Suffern*, the Second Circuit noted that "*Heller* will not save a defendant municipality from liability where an individual officer is found not liable because of qualified immunity." 268 F.3d 65, 71 (2d Cir.2001). Recognizing that *Curley* does not explicitly state that a *Monell* claim may not be dismissed under the circumstances of this case—lack of personal jurisdiction—the inference may still properly be drawn that *Heller* will not save a defendant municipality from liability where individual officers are simply dismissed for failure of service. *Cf. id.* Therefore, as a preliminary matter, the *Monell* claim against the City stands at this juncture, even in light of the dismissals against the individual officers.

## C. *The Substantive Claim Against the City*

■ Plaintiff alleges that NYPD and other law enforcement agencies were engaged in the widespread practice of illegally seizing money from individuals without charging them with any crime, in violation of § 1983. Regardless any procedural circumstance or limitation on liability, the City correctly notes that a *Monell* claim against it cannot survive unless plaintiff demonstrates that his constitutional rights were actually violated by the individual officers. *See Bradley v. City of New York*, 08–CV–1106, 2009 WL 1703237, at *2, 2009 U.S. Dist. LEXIS 51532, at *6 (E.D.N.Y. June 18, 2009) ("To hold a municipality liable under Section 1983, a plaintiff must establish both a violation of his or her constitutional rights and that the violation was caused by a municipal policy or custom."). Although there is an outstanding question as to whether there was probable cause to search Escobar's bags,[2] resolution

---

2. There has been a finding by Supreme Court that there was no probable cause for the

search and subsequent seizure of the curren-

of that question is ultimately irrelevant because it is well-established that a local public employer cannot be held liable under § 1983 simply on a theory of *respondeat superior*. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986); *Walker v. New York*, 974 F.2d 293, 301 (2d Cir.1992) ("The Supreme Court has made clear that § 1983 does not subject municipalities to liability whenever municipal employees go astray. It is only when the municipality itself wreaks injury on its citizens that municipal liability is appropriate.") The short of it is that there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989), which can be demonstrated by showing: "(1) a formal policy, promulgated or adopted by the City [or one of its arms]; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a 'custom or usage' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Bradley*, 2009 WL 1703237, at *2, 2009 U.S. Dist. LEXIS 51532, at *7 (internal citations omitted). In the instant case, Escobar has fallen well short of making such a showing.

To start, there are various iterations by plaintiff of the unconstitutional policy that Escobar alleges the City maintained and enforced. He has claimed in this lawsuit that the City has a policy "through its

police department, alone and in conjunction with other law enforcement agencies, of stopping and detaining individuals, without probable cause, confiscating currency in the possession of these individuals, *without charging* the individuals with any crime, or, if charged, *dismissing the actions* shortly thereafter." (Plaintiff's Affirmation in Opposition to Defendant City of New York's Motion for Summary Judgment, dated Nov. 24, 2010 (Pl. Opp.), at 2.) (emphasis added). The offending policy, on the other hand, has also been described by plaintiff as a policy where officers "stopped individuals impermissibly—regardless of probable cause—searched, relieved these individuals of the possession of substantial amounts of currency[,] did not arrest or charge the individuals with any crime and *released [them] without the currency.*" (Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Reconsideration or Reargument, dated May 7, 2010, at 2.) (emphasis added). Finally, Escobar has also charged that the City has engaged in a "Rambo type policy to deter crime by depriving profits and proceeds of illegal activities to criminals." (*Id.* at 2–3.) Despite the meandering policy path Escobar trods, it is clear that no variation of the alleged policy is applicable to the facts of his own case.

■ The facts and circumstances of Escobar's arrest, in material part, are undisputed. He was stopped by NYPD officers and found to be operating a motor vehicle without a valid license. Nothing in the record suggests that his detention for that charge was in any way improper. And, he was most certainly not sent on his way without the police lodging charges against him. The arrest was not just a ruse to seize the cash, which, apparently, is the

cy, but it is unclear what standard of review was used by the hearing court in making its

determination.

essence of the alleged unconstitutional policy he pleads. Escobar was not only charged, he was arraigned and then indicted. For what it is worth, Escobar alleges that, during a court appearance, his attorney was advised that Escobar could avoid serving jail time if he pled guilty to a "noncriminal 'violation'" and signed a waiver disclaiming any right to the seized funds. (Compl., at ¶ 20). In other words, far from the claimed unconstitutional policy of "dismissal," Escobar was offered a plea bargain. Then, after refusing the deal, he was indicted by a grand jury. Post-indictment, Escobar moved for suppression of the evidence. The People's response was not to dismiss, but to contest. After a hearing, Supreme Court Justice Sheri S. Roman ruled that there was no probable cause for the search of the car or seizure of the cash. It was only then, on April 21, 2004, that the indictment was dismissed. Escobar's case, manifestly, does not fit into any version of his claimed unconstitutional policy by which police officers make arrests simply to seize illegal funds without seriously ever preferring substantive charges against the arrestees.[3] Consequently, even if the policy plaintiff sketches out in his complaint and motion papers existed, Escobar's *Monell* claim would necessarily fail because there is no link between the policy alleged and the officers' conduct in his case. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018 (policy or custom must be "the moving force [behind] the constitutional violation").

■ In addition to there being no relevance to the facts and circumstances of Escobar's case should the claimed constitutionally offensive policy exist, the record is woefully insufficient to support a finding that there is even a material fact in dispute that the claimed offensive (but irrelevant) "policy" existed. During discovery, the City produced a list of all seizures of currency by NYPD exceeding $25,000 occurring during the period 2002 to 2004. Plaintiff notes in summary that "in [these] three years City police officers were involved in 238 arrests in which currency totaling millions of dollars was seized from individuals." (Pl. Opp., at 8.) Escobar contends, in a diversion, that the City "continues to refuse to give specific information as to how many of the currency seizures were from individuals who were not arrested … [or] where the purported criminal proceedings were shams…." (*Id.* at 8–9.) The argument, however, overlooks the cover letter accompanying the disclosures, which instructs: "[T]here are two columns in the charts which indicate the names of the individuals who were arrested when the money was seized. Please note that arrests were made for all entries where defendant's name has been redacted." (Exhibit I to Pl. Opp.) Categorizing the information in accord with this instruction, only in 18 of 323 cases plaintiff offers for review did an arrest not accompany seizure.[4] Such lopsided numbers hardly suggest, much less allow the inference, that the claimed policy existed, especially in

---

**3.** The version of the constitutionally offensive City policy alleged by Escobar in which the arrestee's property is snatched by police and not returned to its rightful owner (the victimized arrestee) has absolutely no relevance here since it has already been determined that Escobar had no property interest in the currency seized by police from his car. *See United States v. United States Currency in the Sum of One Hundred Eighty–Five Thousand Dollars*, 455 F.Supp.2d 145 (E.D.N.Y.2006),

aff'd sub nom *Escobar v. $185,000.00 United States Currency*, 280 Fed.Appx. 36 (2d Cir. 2008).

**4.** Although plaintiff claims that "in the time period [of] three years City police officers were involved in 238 arrests in which currency totaling millions of dollars was seized from individuals, (Pl. Opp., at 3.), the discovery records produced actually show 323 instances, *see* Exhibit I to Pl. Opp.

light of the over 1 million arrests made by the City's force of over 35,000 police officers during the relevant period, 2002–2004.[5] It lends no support to Escobar's claim that the City was engaging in a "Rambo type policy to deter crime by depriving profits and proceeds of illegal activities to criminals." *Monell,* to be sure, requires more than isolated incidents to subject the City to liability. *See Edwards v. City of New York,* 03–CV–9407, 2005 WL 3466009, at *11, 2005 U.S. Dist. LEXIS 34376, at *33 (S.D.N.Y. Dec. 19, 2005) (*Monell* "would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated incidents … were sufficient to hold the municipality liable."). *See also Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 871 (2d Cir.1992) (policy must be "so manifest as to imply the constructive acquiescence of senior policymaking officials."); *Curry v. City of Syracuse,* 316 F.3d 324, 330 (2d Cir.2003) ("Under *Monell,* a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees.") (internal quotation and citation omitted).

Plaintiff also submits as "evidence," its version of the basic details in ten cases where individuals were not charged with a crime but had currency confiscated. These cases are entirely inapposite since Escobar was arrested, arraigned, and indicted. And, moreover, these details do not advance the ball beyond the point Escobar reached as a result of the City's statistical admissions—a handful of isolated incidents insufficient to create a material fact in dispute about the existence of any seizure-related policy. Plaintiff's bald assertion that "[t]here are many, many other cases this office has handled where funds were similarly seized in New York other than by NYPD, and some others out

of the New York jurisdiction totally, i.e. Georgia, North Carolina, Florida," (Pl. Op., at 10), is simply that—conclusory and factually unsupported. Empty claims dumped upon a hollow record is not enough to defeat a properly supported summary judgment motion. *See Shapiro v. Kronfeld,* 00–CV–6286, 2004 WL 2698889, at *8, *22, 2004 U.S. Dist. LEXIS 23807, at *22, *64 (S.D.N.Y. Nov. 30, 2004) (unsupported allegations regarding city administrative policy are insufficient to establish municipal liability).

When the smoke clears, two salient points emerge. First, Escobar has produced insufficient evidence to permit an inference of the existence of any unconstitutional policy or custom. Second, the policy alleged by Escobar does not apply to the facts of his case. Tethered to either, the *Monell* claim against the City cannot, and does not, survive summary judgment scrutiny.

### III. CONCLUSION

For all the foregoing reasons, the motion for summary judgment noticed by the City of New York, the last remaining defendant, is granted.

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

---

**5.** The total number of arrests for 2002, 2003, and 2004 are 316,224, 343,035, and 352,425 respectively. *See* Fiscal Year 2005 Mayor's Managerial Report, available at *http://www. ibo.nyc.ny.us/iboreports/agencyBudgets06/ NYPD% 20Program% 20Budgetmarch06.pdf.*