CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and Howard McDougall, Trustee, Plaintiffs–Appellees,

v.

JOE McCLELLAND, INC., doing business as OK Coal and Concrete Company, Defendant–Appellant.

No. 93–2743.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1994.

Decided May 11, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 6, 1994.

Albert M. Madden (argued), Margaret M. Fahrenbach, Robert A. Coco, Central States, Southeast & Southwest Area Pension Fund, Law Dept., Rosemont, IL, for plaintiffs-appellees.

Robert P. Casey, Murphy, Smith & Polk, Chicago, IL, James E. Davidson (argued),

Roger L. Sabo, Schottenstein, Zox & Dunn, Columbus, OH, for defendant-appellant.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

OK Coal and Concrete Company signed with the Teamsters Union a series of collective bargaining agreements promising to make pension contributions for "each employee covered by this Agreement who is and has been on the payroll thirty (30) days or more." Each of the agreements recognized the Teamsters as the exclusive bargaining agent for "all drivers, helpers, batch plant operators, warehousemen, and all other employees who come under the jurisdiction of the Teamsters, but excluding office personnel and Management." OK Coal also signed agreements promising the Central States Pension Fund, a multi-employer plan, that it would make the contributions required by the collective bargaining agreements. For years OK Coal remitted pension contributions only for drivers who belonged to the Teamsters. An audit by the Fund revealed that OK Coal employed many drivers for whom no contributions had been made. This collection suit ensued. 29 U.S.C. § 1132. After a jury concluded that OK Coal need not make any additional contributions, the judge decided in the Fund's favor as a matter of law, ruling that private understandings between OK Coal and the local union could not diminish the force of the agreement as written. 1993 U.S.Dist. LEXIS 7748 (N.D.Ill.), reconsideration denied, 1993 U.S.Dist. LEXIS 9488.

■ OK Coal operates a ready-mix concrete business and employs drivers for the trucks that carry the slurry to building sites. Other drivers operate dump trucks, block trucks, and tractor trailers carrying construction materials. OK Coal insists that it had an understanding with the local union that, despite its broad language, the collective bargaining agreement would be applied only to the ready-mix drivers. The district court correctly held that *Central States Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir.1989) (en banc), precludes

such an argument. No matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations. The jury may have decided that as a matter of fact OK Coal and the local had such an understanding, but as a matter of law the understanding is irrelevant.

■ In a variation of this contention, OK Coal insists that the collective bargaining agreements actually covered only members of the local union. This is even less successful. It not only asserts that private understandings control over the text but also invokes an "understanding" that is patently illegal. Employers may not distinguish between members of a bargaining unit who belong to the union and those who do not. 29 U.S.C. § 158(a)(3). Terms that are lawful as written may not be given an illegal spin as part of an effort to curtail the obligation they create. *Walsh v. Schlecht,* 429 U.S. 401, 408, 97 S.Ct. 679, 685, 50 L.Ed.2d 641 (1977) ("[A]mbiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable."); *D.E.W., Inc. v. Laborers' Union,* 957 F.2d 196, 201–02 (5th Cir.1992) (applying this principle to pension plans said to be limited to union members); *Byrnes v. DeBolt Transfer, Inc.,* 741 F.2d 620, 622–23 (3d Cir.1984) (same).

■ All of this supposes, however, that the collective bargaining agreements have a plain meaning that may be enforced independent of the parties' negotiations and practices. The phrase "all drivers, helpers, batch plant operators, warehousemen, and all other employees who come under the jurisdiction of the Teamsters, but excluding office personnel and Management" does not *necessarily* mean "all drivers." It readily bears this meaning: "all drivers ... *and* all other employees who come under the jurisdiction of the Teamsters". But it might mean: "all drivers ... who come under the jurisdiction of the Teamsters". If it has this latter scope, the "jurisdiction of the Teamsters" could mean either the members of the bargaining unit for which the Teamsters Union is the exclusive representative, or all employees performing tasks of a kind that the union sometimes organizes. *Gerber Truck Service* does not require or forbid any of these readings. It holds that pension promises in collective bargaining agreements may not be varied by oral understandings or defeated by defenses that would prevent enforcement between the employer and local union. The rule of *Gerber Truck Service* depends on § 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, which curtails employers' ability to evade their pension promises. 870 F.2d at 1149, 1152–53. Nothing in § 515 or the gloss placed on that statute in *Gerber* supersedes the ordinary process of interpretation—provided we understand that the interpretation must be supported by written materials, rather than oral side agreements and private intents. See generally *Bidlack v. Wheelabrator Corp.,* 993 F.2d 603 (7th Cir.1993) (en banc).

At trial the parties debated the meaning of "jurisdiction of the Teamsters". The Fund asserted that this phrase refers to the constitution of the Teamsters Union, which authorizes the union to organize and represent just about anyone. If this is so, the phrase does not limit the scope of "all drivers". OK Coal contended that "jurisdiction of the Teamsters" means the bargaining unit for which the Teamsters was the exclusive representative: ready-mix drivers. Because OK Coal (and its corporate predecessors, which we ignore) recognized the union without invoking the processes of the National Labor Relations Board, there is no formal definition of the bargaining unit. OK Coal contends that the bargaining history supports a limitation to ready-mix drivers. The earliest collective bargaining agreements were negotiated between the Teamsters and a multi-employer association of cement contractors; this implies, OK Coal insists, that the coverage of the agreements remains so limited.

■ One difficulty with this understanding is that OK Coal signed additional collective bargaining agreements with the local unit after diversifying beyond cement operations

(in the language of labor law, there were "accretions" to the bargaining unit), and the agreements themselves do not limit coverage by type of truck. Each agreement provides that drivers' pay and benefits do *not* depend on the type of truck driven. In response to a representation petition filed by another union in 1992, OK Coal told the NLRB that the bargaining unit extended beyond ready-mix drivers. The compelling objection to OK Coal's position, however, lies in its own implementation of the agreement. When the Fund began its audit, OK Coal employed 32 truck drivers. It was making pension contributions for 2 of 9 ready-mix drivers, 1 of 15 dump truck drivers, 1 of 6 tractor trailer drivers, and 1 of 2 block truck drivers. This pattern is inconsistent with any claim that the "jurisdiction of the Teamsters" means a bargaining unit of ready-mix drivers. The only pattern here is that OK Coal and the local union drew a line at membership in the local union—which is, as we have emphasized, an illegal side deal that cannot reduce obligations under contracts that are legal as written. So clear is this that nothing remained for the jury to do. Nothing in the agreements hints at the kind of limitation the employer and local union devised in practice, and at all events extrinsic evidence may not be used to create an ambiguity in a pension or welfare agreement subject to ERISA. *Bidlack*, 993 F.2d at 607–08 (lead opinion), 616–19 (dissenting opinion) (these two opinions speak for a majority of the court on this subject); *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1187 (7th Cir.1994).

One other issue calls for brief attention. OK Coal contends that the Fund did not establish injury, because it did not establish that it will be required to pay pensions to the drivers for which OK Coal did not make contributions. This misunderstands the nature of multi-employer, defined-benefit plans. The actuarial assumptions on which these plans are constructed assume that for many, perhaps a majority, of employees on whose behalf contributions are made, the plan will not make payments. Some will leave the industry before their benefits vest, and others will die before receiving benefits equal to the value of the contributions made. *Gerber Truck Service*, 870 F.2d at 1151–55. Income

and outlay for each employee match only in defined-contribution plans. Thus the Fund's injury is precisely that it did not receive contributions on behalf of persons who might never receive benefits. What is more, the Fund is responsible for pensions on behalf of covered employees whether or not the employer makes the required contributions. *Id.* at 1153. The Central States Pension Fund's governing document recognizes this: "A Participant shall earn Contributory Service for any employment with a Contributing Employer *required* to make Employer Contributions on his behalf according to a Collective Bargaining Agreement." Section 1.09(a) (emphasis added). The employer's legal obligation to contribute, and not the employer's actual payment, serves as the basis of the Fund's obligation to extend pension credits to the employees.

OK Coal's remaining contentions have been considered and do not require discussion. The district court ordered OK Coal to reimburse the Fund for the attorneys' fees incurred in enforcing the contribution agreement. See 29 U.S.C. § 1132(g)(2)(D). The Fund is equally entitled to be made whole for the expense of defending this appeal, and it has 15 days to file a statement of the costs and reasonable attorneys' fees it has incurred.

AFFIRMED.