**CAPOZZA TILE COMPANY, INC., Plaintiff**

v.

**Richard N. JOY, et al., Defendants**

and

**John Flynn, et al., Plaintiffs**

v.

**Capozza Tile Company, Inc., Defendant**

**No. 01–108–PC.**

United States District Court, D. Maine.

Sept. 30, 2002.

---

310

Marshall J. Tinkle, David M. Hirshon, Tompkins, Clough, Hirshon & Langer, Portland, ME, for Capozza Tile Company, Inc., plaintiff.

Jeffrey Neil Young, McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, ME, Ira R. Mitzner, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, for Bricklayers & Trowel Trades Intern. Pension Fund.

Jonathan S.R. Beal, Fontaine & Beal, P.A., Portland, ME, Michael A. Feinberg, Renee Bushey, Feinberg, Charnas & Birmingham, P.C., Boston, MA, for Richard N Joy, International Union of Bricklayers & Allied Craftworkers Local No. 1—Northern New England, defendants.

### ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, Chief Judge.

The United States Magistrate Judge filed with the court on April 29, 2002, with copies to counsel, his Recommended Decision on Motions for Summary Judgment and Memorandum Decision on Availability of Jury Trial. Objections to the Recommended Decision were filed by plaintiffs, Trustees of the Bricklayers & Trowel Trades International Pension Fund ("Fund"), on May 8, 2002; by Capozza Tile ("Capozza") on May 13, 2002; and by defendant International Union of Bricklayers & Allied Craftworkers Local No.1—Northern New England ("Local 1") on May 15, 2002. I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommen-

dations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determine that no further proceeding is necessary.

■ I add only the following. The Fund argues that it should be treated like a holder in due course and should be able to rely on the signed document in its possession, since it is upon just such documents that it must make actuarial assumptions concerning amounts that it will have to pay and thus amounts that it must collect as premiums. Mem. Supp. of Objections at 4 (Docket No. 55). That argument has some appeal, because Fund trustees have no good way to determine whether the agreements presented to them have been properly entered into. As a result, the cases have routinely denied employers certain fraud defenses, specifically so-called fraud in the inducement defenses, where the employer knew what it was signing but relied perhaps on a union's statements that it would enforce the document differently than written. *See, e.g., Agathos v. Starlite Motel,* 977 F.2d 1500, 1505–06 (3d Cir.1992); *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1153–55 (7th Cir.1989); *Southwest Adm'rs, Inc. v. Rozay's Transfer,* 791 F.2d 769, 774–75 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). Capozza, however, is arguing fraud not in the inducement, but in the execution. It says that the document the Fund has and is suing on (a collective bargaining agreement) is not a document that its president signed. (The president says that he was given only a signature page and was told that it dealt only with pension benefits for four employees. A jury may ultimately disbelieve him, but his statement creates a genuine issue of material fact.) Even a holder in due course cannot overcome that kind of defense. U.C.C. § 3–305(2)(b) (1998). The policy arguments the Fund trustees advance still

seem to apply (reliance upon the document for actuarial purposes and the difficulties they confront in testing the validity of the collective bargaining agreements they are given), but the common law distinction is recognized in the cases; the courts are willing to enforce a document that a party signed under a misapprehension of what its effect would be, but balk at enforcing a document that the party signed on the misapprehension that it was something different than it actually was. *Compare Agathos,* 977 F.2d at 1505–06, *Gerber,* 870 F.2d at 1153–55, *and Rozay's Transfer,* 791 F.2d at 774–75, *with Connors v. Fawn Mining Corp.,* 30 F.3d 483, 492 (3d Cir. 1994), *and Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1504–05 (9th Cir.1984). Neither ERISA nor the caselaw supports summary judgment for the Fund trustees if I take the factual assertions most favorably to Capozza.

Finally, there is no necessary inconsistency in recognizing personal immunity for the union official while leaving open the preemption issue. The policies at stake in preemption and immunity are not identical.

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED**. The motion of the Fund plaintiffs for summary judgment is **DENIED**. The motion of defendants Richard N. Joy and Local 1 for summary judgment is **GRANTED** as to all claims asserted against Joy and otherwise **DENIED**.

So **ORDERED**.

### RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT AND MEMORANDUM DECISION ON AVAILABILITY OF JURY TRIAL

DAVID M. COHEN, United States Magistrate Judge.

John Flynn and the trustees of the Bricklayers and Trowel Trades Interna-

tional Pension Fund ("the Fund") move for summary judgment on their complaint ("the Flynn motion") against Capozza Tile Company, Inc. ("Capozza") in one of the two actions that have been consolidated for purposes of this proceeding.[1] I recommend that the court deny that motion. Richard N. Joy and the International Union of Bricklayers & Allied Craftworkers Local No. 1—Northern New England ("Local 1") move for summary judgment in the other action ("the Joy motion"). I recommend that the court grant the motion as to Joy and deny it as to Local 1.

Capozza moves to strike certain paragraphs of the statement of material facts submitted in support of the Flynn motion and all of the statement of material facts submitted in support of the Joy motion. Capozza also moves to strike all factual allegations and new material filed in response to its motion to strike portions of the Flynn statement of material facts, and the Flynn plaintiffs in turn move to strike this motion to strike. Because my recommended decision does not rely on many of the factual allegations challenged by the motions to strike, it is unnecessary to address those motions separately. Where I do rely on any factual assertion so challenged, I will note my reasons for doing so in the body of this recommended decision.

Finally, in accordance with my Amended Report of Final Pretrial Conference and Order ("Final Pretrial Order") (Docket No. 40), the parties have submitted memoranda of law on the question whether Capozza is entitled to a jury trial on the claims asserted against it in the Flynn action. I conclude that jury trial is available on those claims.

## I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant .... By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party ....' " *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548); Fed.R.Civ.P. 56(e). "This is especially true in respect to claims or issues on which the nonmovant bears the burden of proof." *International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing*

---

1. The Flynn plaintiffs have requested oral argument on their motion. Plaintiffs' Motion for Summary Judgment ("Flynn Motion") (Docket No. 17) at 1. Inasmuch as the parties' papers provide a sufficient basis on which to decide the motion, the request for oral argument is denied.

*Ctr.,* 103 F.3d 196, 200 (1st Cir.1996) (citations omitted).

## II. Factual Background

The parties' statements of material facts include the following undisputed relevant facts, appropriately supported in accordance with this court's Local Rule 56.

Capozza is a tile and flooring subcontractor and retailer. Plaintiff's Response to Defendants' Statement of Material Facts ("Capozza Responsive Joy SMF") (Docket No. 29) ¶ 1; Affidavit of Joseph A. Capozza, Jr. ("Capozza Aff.") (Docket No. 26) ¶ 1. The Bricklayers and Trowel Trades International Pension Fund is a multiemployer employee benefit plan that provides pension and other benefits to employees who work in the construction industry under contracts negotiated between local unions and employers. Plaintiffs' Rule 56(B) Statement of Materials [sic] Facts as to Which There is No Genuine Issue ("Flynn SMF") (Docket No. 19) ¶ 1; Defendant's Response to Plaintiffs' Statement of Material Facts, etc. ("Capozza Responsive Flynn SMF") (Docket No. 30) ¶ 1. Employers who are parties to such contracts must make contributions to the Fund. *Id.* In 1993, Joseph A. Capozza, Jr., then president of Capozza, and three other Capozza employees were members of the International Union of Bricklayers and Allied Craftworkers, Local No. 1. International Union of Bricklayers & Allied Craftworkers Local No. 1—Northern New England and Richard N. Joy's Statement of Material Facts Not in Dispute ("Joy SMF") (Docket No. 22) ¶ 1;[2] Capozza Responsive Joy SMF ¶ 1. David Stupar is the executive director of the Fund. Flynn SMF ¶ 2; Capozza Responsive Flynn SMF ¶ 2. As executive director, Stupar supervises the collection of employer delinquencies. *Id.* Richard N. Joy is the current president and secretary/treasurer of Local 1. Joy SMF ¶ 3; Capozza Responsive Joy SMF ¶ 3.

The collection procedures adopted, enacted and memorialized by the trustees of the Fund authorize assessment of interest at 15% per annum on delinquent contributions, as well as an additional amount in the form of liquidated damages which is the greater of 15% per annum or 20% of the delinquency. Flynn SMF ¶¶ 3–4; Capozza Responsive Flynn SMF ¶¶ 3–4. Joseph A. Capozza, Jr. had one or more discussions with Joy in 1993. Joy SMF ¶ 4; Capozza Responsive Joy SMF ¶ 4; Capozza Aff. ¶ 3. After the meeting or meetings, Joseph A. Capozza, Jr. executed the signature page of an agreement presented to him by Joy. Joy SMF ¶ 4; Capozza Responsive Joy SMF ¶ 4; Capozza Aff. ¶¶ 4, 7–8. He did so to preserve the pension benefits of the four union members (himself included). Joy SMF ¶ 6; Capozza Responsive Joy SMF ¶ 6; Capozza Aff. ¶ 8. The parties dispute whether Joseph A. Capozza, Jr. ever requested a copy of the full agreement. Joy SMF ¶ 7; Capozza SMF ¶ 33.

Since 1993 Capozza has made regular contributions to the Fund for the four employees who were union members at the time Joseph A. Capozza, Jr. signed the document. Joy SMF ¶ 8; Capozza Responsive SMF ¶ 8. Capozza made these payments based on periodic statements from the Fund that indicated how much to

---

**2.** Capozza moves to strike the entire Flynn statement of material facts because "[i]t is replete with multiple allegations set forth in the same numbered paragraph and is therefore unduly burdensome to respond to." Capozza Responsive Joy SMF at 1. While the Joy statement of material facts may not be a mod-

el of compliance with Local Rule 56 in this regard, response in accordance with that rule would not be unduly burdensome, as amply demonstrated by Capozza's own response, and the motion to strike the document on this basis is denied.

pay. Defendant's Statement of Material Facts ("Capozza SMF I"), included in Capozza Responsive Flynn SMF ¶ 62; Plaintiff's Rule 56(D) Reply Statement of Material Facts, etc. ("Flynn Responsive SMF") (Docket No. 38) ¶ 62. The Fund, Local 1 and Joy contend that the document Joseph A. Capozza, Jr. signed was a collective bargaining agreement requiring Capozza to make contributions to various union funds, including the Fund, for all of its employees whether members of Local 1 or not and that the agreement contained a so-called "evergreen clause" by which the term of the agreement was automatically renewed in the absence of timely written notice of termination by one of the parties to the other. Flynn SMF ¶¶ 8–9, 11; Joy SMF ¶ 4.

On October 15, 1992 the executive board of the International Union of Bricklayers & Allied Craftsmen ("the Union") established an administrative district council of Maine, New Hampshire and Vermont. Capozza SMF I ¶ 17; Flynn Responsive SMF ¶ 17. Local unions in northern New England affiliated with the Union, including Local 2, of which Joseph A. Capozza, Jr. was then a member, ran the district council. *Id.* ¶¶ 3, 18. Joy assumed the position of business manager of the district council. *Id.* ¶ 19. The collective bargaining agreement which the Fund and Local 1 contend that Joseph A. Capozza, Jr. signed in 1993, a copy of which is Exhibit 2 to the Declaration of David Stupar[3] ("Stupar

Dec.") (Exh. A to Flynn SMF), was prepared by Joy and Alfred DiRienzo, the Union's regional director for the New England region. *Id.* ¶ 20. The purpose of this "district council agreement" was to have one collective bargaining agreement under which each of the affiliated locals would work. *Id.* ¶¶ 21, 24.

Joy went to Portland in 1993 to try to "sign on" Capozza, even though the Union had received no indication from any employees of Capozza that they wanted the union or district council to bargain on their behalf. *Id.* ¶ 25. Prior to meeting with Joseph A. Capozza, Jr., Joy had already signed the district council agreement, contrary to proper practice. *Id.* ¶ 27. At the time, the majority of Capozza's employees were non-union. *Id.* ¶ 28. Joseph A. Capozza, Jr. retired in late 1993 or early 1994. *Id.* ¶ 41. His son, Joseph F. Capozza, has been president of Capozza since 1999. Joy SMF ¶ 7; Capozza Responsive Joy SMF ¶ 7.

The district council was dissolved on or about July 22, 1993, some time after the signature page was executed. Capozza SMF ¶ 46; Flynn Responsive SMF ¶ 46. On or about August 1, 1993 the Union merged the locals, including Local 2, into a "mega local" named Local Union 1, Northern New England. *Id.* ¶ 48. Joy was appointed president of the new Local 1. *Id.* ¶ 49. On or about December 29, 1994 the Union wrote to Joy advising that certain

**3.** Capozza states that Exhibit 2 to the Declaration of David Stupar "is not self-authenticating," that "[t]here is no competent evidence to connect" the first 28 pages of that document and the signature page, and that "the signature page is dated May 14, 1993, whereas Capozza was not asked to sign any agreement until June 15, 1993." Capozza Flynn Objection at 9. To the extent that these statements may reasonably be interpreted as a motion to strike the document, the motion is denied. It is ironic that Capozza does not suggest that this document is not the docu-

ment referred to repeatedly in its own complaint. Amended Complaint ("Capozza Complaint") (Docket No. 2 in Case No. 01–108–P–C, before consolidation) ¶¶ 9, 13, 27–28, 33. *See generally Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998). In any event, for purposes of summary judgment it is sufficient that this document is authenticated as the document which the Union claims is the collective bargaining agreement signed by Joseph A. Capozza, Jr., and that authentication is accomplished by the Stupar affidavit. Stupar Dec. ¶ 9.

collective bargaining agreements, including those covering Portland, Maine, were about to expire. *Id.* ¶ 53; Deposition of Alfred A. DiRienzo, Exh. B to Flynn Responsive SMF, at 52–53 & Exh. 1 thereto. Contractors other than Capozza that had signed agreements with either the district council or Local 1 in 1993 signed new contracts in the period between 1993 and 1998. *Id.* ¶ 54. Joy called Joseph F. Capozza in 1998 and asked him to sign a new contract; Joseph F. Capozza refused. *Id.* ¶¶ 56–57. Joy told Joseph F. Capozza that Capozza was a union contractor and had a collective bargaining agreement. *Id.* ¶ 58. Joseph F. Capozza asked Joy to send him a copy of that agreement. *Id.* ¶ 59. Joseph F. Capozza received shortly thereafter a fax of the signature page signed by Joseph A. Capozza, Jr. in 1993 which provided "Expires 4/30/1995." *Id.* ¶ 60. Joseph F. Capozza "figured 'that was the end of it.'" *Id.*

### III. Discussion

### A. The Fund's Motion

The Fund contends that summary judgment should be entered in its favor in the Flynn action because "it is undisputed that . . . Capozza Tile[ ] signed a collective bargaining agreement which bound it to make contributions to the [Fund], *intended* to sign a collective bargaining agreement, and failed to make the contributions required." Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Flynn Motion") (Docket No. 18) at 7 (emphasis in original). Capozza responds that Joseph A. Capozza, Jr. did not intend to sign a collective bargaining agreement, that the agreement is void due to fraud in the execution, that the agreement terminated by its own terms, that the agreement terminated by operation of law and that the Fund is estopped to seek these contributions. Defendant's Objection to Motion for Summary Judgment, etc. ("Capozza Flynn Opposition") (Docket No. 28) at 7–19. Capozza has provided sufficient evidence of fraud in the execution to allow this claim to go to trial.

■ Capozza cannot succeed on its estoppel claim or its argument that the agreement terminated by its own terms. While estoppel appears to be available as a defense in actions of this nature, *see Teamsters Local 251, Health Servs. & Ins. Fund v. Teamsters, Chauffeurs, Warehousemen & Helpers Local 251,* 689 F.Supp. 48, 52–53 (D.R.I.1988), the misrepresentation on which Capozza relied must have been made by the Fund, not the Union, *see Central States, Southeast & Southwest Areas Pension Fund v. Joe McClelland, Inc.,* 23 F.3d 1256, 1258 (7th Cir.1994). Capozza contends that Joy, who is the only person alleged to have made the misrepresentations at issue, was an agent of the Fund because the agreement benefited the Fund, Joy "attended meetings of" the Fund, Joy contributes to the Fund, Joy reported that Capozza was delinquent in its contributions to the Fund and requested the audit and decided to initiate this lawsuit, and Joy acted on behalf of the Fund's "sister trust (International Health Fund) in stating that the fund had agreed to replacement coverage." Capozza Flynn Opposition at 19. None of these allegations, alone or in combination, would be sufficient to establish that Joy was acting as an agent of the Fund when he solicited Joseph A. Capozza, Jr.'s signature. Accordingly, Capozza cannot assert an estoppel defense. *See Trustees of Int'l Pension Fund v. Paul G. White Tile Co.,* 2000 WL 761888 (D.Me. Mar.21, 2000), at *3–*4.

■ Capozza's contention that the agreement terminated by its own terms is based on the statement "Expires 4/30/1995" which appeared on the signature page and every page, including the title page. Capozza Flynn Opposition at 4,

10. The agreement also includes the following "evergreen clause:"

> This Agreement will expire April 30, 1995, but if neither party to this Agreement gives notice in writing to the other party on or before February 28, 1995 that it desires a change after May 1, 1995, then this Agreement will continue in effect until April 30, 1996 and so on each year thereafter unless on or before February 28 of each year thereafter a notice is given by either party.

Agreement Between the International Union of Bricklayers & Allied Craftsmen District Council of Maine, New Hampshire, and Vermont and Signatory Contractors ("the Agreement"), Exh. 2 to Stupar Dec., Article XV, § 1. Capozza contends that this clause is ambiguous and accordingly must be construed against the Union. Capozza Flynn Opposition at 10–11. Assuming *arguendo* that the Union and the Fund may be treated as a single entity for purposes of this argument, the clause is not ambiguous. It is consistent with the expiration date stated throughout the document and clearly states that the Agreement will nonetheless self-renew in the absence of action by either party. Capozza has offered no evidence that such action took place. Accordingly, it may not contend that the Agreement terminated automatically on April 30, 1995.

■ Capozza also argues that the Agreement terminated by operation of law because the district council, which was the signing party, Agreement at 29, ceased to exist soon after the execution, Capozza Flynn Opposition at 11. In its statement of material facts, Capozza includes evidence to the effect that the district council was dissolved on or about July 22, 1993; the International Union of Bricklayers & Allied Craftsmen merged "the locals, including Local 2, into a 'mega local,' named 'Local Union 1, Northern New England'" on or about August 1, 1993; Joy was appointed president of the new local, which was a product of the consolidation of the previously-existing northern New England locals; and Joy and DiRienzo prepared a new collective bargaining agreement for Local 1. Capozza SMF I ¶¶ 46–51. Capozza contends that the elimination of the district council "automatically terminated" the Agreement. Capozza Flynn Opposition at 11. However, none of the case law cited by Capozza supports its position.

*Brooks v. NLRB,* 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954), deals only with a very narrow question of interpretation of a rule promulgated by the NLRB, having to do with the time period during which a union certification must be honored if the certified union subsequently "dissolved or became defunct," *id.* at 98, 75 S.Ct. 176. The Supreme Court's discussion of the factual situation in that case prevents the broad application of its holding that Capozza assumes here; the facts in this case are easily distinguishable. Similarly, the state court's holding in *In re Arbitration Between Cuba–Rushford Cent. Sch. Dist. & Rushford Faculty Ass'n,* 182 A.D.2d 127, 585 N.Y.S.2d 913 (App.Div.1992), is limited to an interpretation of New York state law governing the consolidation of school districts, *id.* at 915, which has no application to the facts of this case even by analogy. The Supreme Court's opinion in *Laborers Health & Welfare Trust Fund for N. California v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 549, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), dealt with the question whether an employer could refuse to continue contributions to a benefit plan after a contract had expired, not with the question whether a contract expires by force of law if the union which is a party to that contract ceases to exist, merges with another union or otherwise changes its character. In *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.,* 845 F.2d 23, 25–26 (1st Cir.1988), the First Circuit considered only whether the presi-

dent and sole shareholder of a corporation could be held personally liable for contributions to a benefit fund that the corporation was contractually obligated to make.

More instructive in this regard is the opinion of the federal district court in *Joyce v. Silveri Tile Co.*, 27 F.Supp.2d 251 (D.D.C.1998), in which the local union that had entered into the collective bargaining agreement at issue dissolved during the year after the agreement was executed and the employer argued that the rights of the employee benefit fund set forth in the agreement were thereby extinguished, *id.* at 252–53. Citing *Louisiana Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404 (5th Cir.1998), the court held that a defense of lack of proper successorship by the current union was not available in an action, like the instant case, brought under 29 U.S.C. § 1145. *Id.* at 254. Capozza attempts to distinguish *Joyce* by arguing that the contracting entity in that case merged into another, while the contracting entity here "was simply dissolved," Capozza Flynn Opposition at 12 n. 3, but that distinction makes no difference in terms of the rationale set forth by the *Joyce* court, which I find persuasive. Capozza may not succeed on this defense.

 The result may be different, however, with Capozza's remaining asserted defenses, which are essentially two variants on a single theme. If Joseph A. Capozza, Jr. did not intend to enter into the collective bargaining agreement, then he executed the signature page as the result of fraud in the execution. In collection actions invoking 29 U.S.C. § 1145, defenses which make a collective bargaining agreement voidable, like fraud in the

inducement, are not available. *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441, 1443 (9th Cir.1995); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.1990). However, a defense that would render the Agreement void *ab initio*, like fraud in the execution, is available. *MacKillop*, 58 F.3d at 1443.

Fraud in the execution occurs where there is a misrepresentation as to the character or essential terms of a proposed contract, and a party signs without knowing or having a reasonable opportunity to know of its character or essential terms. Such a fraud causes a party to believe that the act which he does is something other than it actually is. In order to prevail on such a defense, a party must show excusable ignorance of the contents of the writing signed.

Proof that a party secretly substituted one type of document for another is evidence of fraud in the execution.

*Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31–32 (2d Cir.1997) (internal quotation marks and citations omitted). *See also* Restatement of Contracts (2d) § 163 (1981) ("If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.")

 Here, Capozza offers evidence that Joseph A. Capozza, Jr. signed a one-page document given to him by Joy which Joy represented as "related to our agreement concerning the four union members," Capozza, Jr. Aff. ¶ 7;[4] that Joy told Jo-

---

4. The Fund plaintiffs state with respect to this affidavit that "[t]he law is clear that a party cannot contradict its own sworn testimony with a subsequently filed affidavit." Fund Reply to Defendant's Objection to Motion for Summary Judgment, etc. ("Fund Reply")

seph A. Capozza, Jr. when he offered him the one page for signature that the Agreement was limited to the four union members and no one else, *id.* ¶ 4; that Joy did not show Joseph A. Capozza, Jr. the rest of the Agreement before he signed the signature page, *id.;* that Joy told Joseph A. Capozza, Jr. at that time that there was no need to review the rest of the Agreement before execution and that he would send the rest of the Agreement to the company later, *id.* ¶ 6; and that Joseph A. Capozza, Jr. told Joy at this time that Capozza could not afford to enter any agreement imposing any obligations beyond the four union members, *id.* ¶ 3. The Fund disputes each of these factual allegations, but that is the very nature of summary judgment, which is not available when material facts are in dispute. The Fund offers evidence that Joseph A. Capozza, Jr. was familiar with the concept of collective bargaining agreements, Flynn Responsive SMF ¶¶ 1, 6, 3[sic], 8–9, but those facts at most challenge Joseph A. Capozza, Jr.'s credibility; they do not and cannot establish that his testimony is false as a matter of law and may be disregarded for purposes of summary judgment. The evidence submitted by Capozza establishes that there are disputed material facts with respect to the defense of fraud in the execution. *See, e.g., Connors v. Fawn Mining Corp.,* 30 F.3d 483, 492 (3d Cir.

1994) (only signature page of alleged collective bargaining agreement was before corporate defendant at time of execution; where testimony was that agreement was that a certain term would not appear in the contract being executed, agreement that did contain this term would be "radically different" from agreement defendant thought it was executing and defendant entitled to defense of fraud in execution); *Iron Workers' Local No. 25 Pension Fund v. Klassic Servs., Inc.* 913 F.Supp. 541, 543–45 (E.D.Mich.1996) (fraud in execution adequately pleaded where defendant only provided with signature page and told that agreement only covered work to be performed at specific location for four days and written agreement subsequently produced covered longer period and other work).

■■■ The parties spend some time and effort disputing whether Joseph A. Capozza, Jr. requested a copy of the full Agreement after signing it and whether Joy responded to those requests, but that is not the issue for purposes of a fraud-in-the-execution defense. "To prevail on a defense of fraud in the execution, a party must show excusable ignorance of the contents of the writing signed," *Agathos v. Starlite Motel,* 977 F.2d 1500, 1505 (3d Cir.1992), at the time it was signed, *Iron Workers' Local No. 25 Pension Fund v.*

(Docket No. 39) at 2. If the Fund plaintiffs mean by this statement to object to the use of the affidavit as evidence in connection with their motion for summary judgment, the objection is overruled. They identify only one statement made by Joseph A. Capozza, Jr. at deposition which they apparently contend is contradicted by some unidentified portion of his affidavit: an assertion that Joseph A. Capozza, Jr. testified at his deposition that "because of 'the consequences of what would happen if he didn't sign a union contract, [he] signed.' " *Id.* at 1–2. The term "union contract" appears only in the question posed to Joseph A. Capozza, Jr. at his deposition by counsel for the Fund, Deposition of Joseph A.

Capozza, Jr. (Exh. A to Fund Reply) at 65, and the deponent's response, "Yes, sir," to that question cannot be deemed to be an admission that he knowingly signed a collective bargaining agreement covering all of his employees, as the Fund plaintiffs contend. In addition, nothing in the affidavit necessarily contradicts this deposition answer. *See Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4 (1st Cir.1994) (interested witness who has given clear answers to unambiguous questions at deposition may not create conflict and resist summary judgment with affidavit that is clearly contradictory and does not give satisfactory explanation of change in testimony).

*Allied Fence & Sec. Sys., Inc.,* 922 F.Supp. 1250, 1258 (E.D.Mich.1996). The facts alleged by Capozza would allow a reasonable factfinder to conclude that Joseph A. Capozza, Jr. neither had knowledge of the character or essential terms of the Agreement upon which the Fund now seeks to recover and that he was not provided with a reasonable opportunity to obtain that knowledge before signing. *Southwest Adm'rs., Inc. v. Rozay's Transfer,* 791 F.2d 769, 774 (9th Cir.1986). *Compare Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1155 (7th Cir.1989) (no fraud in execution where officer signing agreement knew that it was collective bargaining agreement and did not plan to live up to commitment).

Capozza has submitted sufficient evidence to allow its defense of fraud in the execution to proceed to trial. The Fund's motion for summary judgment should be denied.

### B. The Union's Motion

Joy and the Union move for summary judgment on Capozza's complaint. They contend that (i) Capozza's claims are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157 *et seq.;* (ii) Capozza has not provided sufficient evidence of fraud; and (iii) Joy is exempt from individual liability. Memorandum in Support of Defendants Joy and Local l's Motion for Summary Judgment ("Joy Motion") (Docket No. 21) at 4–13. Only the third of these arguments has merit.

■ *1. Preemption.* Capozza alleges fraud, negligent misrepresentation, estoppel and a claim for contribution or indemnity against both the Union and Joy. Capozza Complaint ¶¶ 6–19, 26–35. The Union's memorandum of law in support of its motion for summary judgment on the issue of pre-emption is essentially identical to the memorandum it submitted earlier in support of its motion to dismiss the complaint, *compare* Joy Motion at 4–10 *with* Memorandum in Support of Defendant's Motion to Dismiss (attached to Defendants' Motion to Dismiss, Docket No. 3) at 4–11, which was denied. Order Affirming the Recommended Decision of the Magistrate Judge (Docket No. 13). I will not repeat here the analysis I presented in my recommended decision on that motion. *See* Recommended Decision on Defendants' Motion to Dismiss (Docket No. 8) at 3–8.

■ In *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act [29 U.S.C. §§ 157, 158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board," *id.* at 245, 79 S.Ct. 773. The party claiming preemption under *Garmon* "is required to demonstrate that his case is one that the Board could legally decide in his favor." *International Longshoremen's Ass'n, AFL–CIO v. Davis,* 476 U.S. 380, 395, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). The parties in this case discuss preemption only in terms of an employer's statutory obligation to bargain collectively with a labor organization.

The only significant difference between the Union's motion to dismiss and its motion for summary judgment on the issue of preemption is the following contention:

Capozza identified only four employees who performed tile work in 1993 in its discovery response. Each of the employees identified had been a member of the Bricklayers union for several years prior to 1993 when the Agreement was signed. There is really no question that under NLRB law that [sic] employees performing ceramic tile work would be an appropriate unit for collective bargaining, as the Board has certified many

such units. If a union has been designated through the submission of union membership cards as the representative of the majority of a company's employees, the company has a duty of [sic] bargain with the union. Thus, a majority of Capozza's employees were represented by Local 1, and the parties had an obligation to bargain in good faith when Capozza signed the Agreement in 1993.

\* \* \* \* \* \*

Capozza's own Complaint and its officers' testimony acknowledges that all relevant employees were members of the Bricklayer's Union and that they sought union benefits available only under a collective bargaining agreement. Capozza has identified no other employees who performed tile work for the Company when the Agreement was signed, and it cannot survive summary judgment on this issue.

Joy Motion at 10–11 (citations omitted). The Union apparently makes this argument in response to my observation in my recommended decision on its motion to dismiss that the amended complaint did not reveal how many employees Capozza had and whether the Union represented a majority of those employees or a majority of the employees in a unit appropriate for the purposes of collective bargaining. Recommended Decision at 6. This information is relevant to the language of 29 U.S.C. § 159(a) which describes the appropriate labor representative for purposes of collective bargaining.

There are several problems with the Union's argument. First, it employs faulty logic. It states that, because the Union could have represented the requisite number of·Capozza's employees, it did so. The conclusion does not follow from the premise. Second, it assumes without factual support in the summary judgment record that a majority of Capozza's em-

ployees had designated the Union as their representative. The only evidence in the record is to the contrary. Plaintiff's Statement of Material Facts ("Capozza SMF II") (included in Capozza Responsive Joy SMF) ¶¶ 18, 21, 37; Deposition of Richard N. Joy at 104 (prior to April 1993 he had not received any communication from Capozza employees to effect that they wanted Union to bargain on their behalf); Capozza Aff. ¶¶ 2, 12 (when Joseph A. Capozza, Jr. executed Agreement, majority of Capozza employees were non-union; at no time during his presidency of Capozza did any employee request the Union become bargaining representative of Capozza's employees). Next, the argument mischaracterizes the complaint, which in any event is unsworn and cannot provide evidence for purposes of summary judgment. The complaint cannot reasonably be construed to allege that any Capozza employee other than the four already identified was ever a member of the Union.

The Union attempts to overcome this lack of evidence critical to its *Garmon* claim by arguing that Capozza failed to provide the names of any employees other than the four already identified in response to an interrogatory, making it impossible for Capozza now to assert that there were more than four additional employees, and that Capozza's evidence that a majority of its employees at the time were not members of the Union is too conclusory to provide the basis for denial of a motion for summary judgment. Both arguments fail. First, the interrogatory identified by the Union, Defendants' Reply to Plaintiff's Objection to Plaintiff's [sic] Motion for Summary Judgment ("Joy Reply") (Docket No. 37) at 2, only asks Capozza to identify employees "who performed work under the Collective Bargaining Agreement." It is entirely consistent with Capozza's position in this litigation that its response listed only the four previously-identified employees.

Contrary to the Union's argument, this interrogatory clearly did not ask Capozza to identify all of its employees at the relevant time. The evidence submitted through the affidavit of Joseph A. Capozza, Jr. on this point is not inconsistent with the discovery response. Next, the statement that a majority of Capozza's employees at the relevant time were not members of the Union is a sufficient factual statement for purposes of summary judgment. It is an independent factual statement that may not be fairly characterized as conclusory.

The Union has not established that *Garmon* preemption is appropriate in this case and its motion for summary judgment on this basis should be denied.

■■■ 2. *Evidence of Fraud.* Under Maine law,

a defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.... Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to him.

*Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979). "A claim for fraud must be proved by evidence that shows that the existence of fraud is highly probable." *Francis v. Stinson,* 760 A.2d 209, 217 (Me.2000) (citation and internal quotation marks omitted). Where there is no affirmative misrepresentation by the defendant, a plaintiff may also establish fraud by demonstrating an active concealment of the truth by the defendant. *Kezer v. Mark Stimson Assocs.,* 742 A.2d 898, 905 (Me.1999).

■■■ Here, the Union contends that Joseph A. Capozza, Jr. "admits that he knew that he was signing a collective bargaining agreement," "[t]here is no evidence that Joy or any Local 1 representative made any false statements," and "[t]here is no evidence that any Local 1 representative concealed the Agreement." Joy Motion at 12. It also argues that Capozza acted in conformance with the terms of the Agreement and that Capozza could not have reasonably relied on any alleged misrepresentations because Joseph A. Capozza, Jr. "had extensive experience with Unions, collective bargaining agreements and employee benefit trust funds." *Id.*

I have already rejected the Union's first contention. *See* n. 4, *supra.* The cited testimony may also reasonably be interpreted as Joseph A. Capozza, Jr.'s agreement to the proposition that he signed a "union contract"—the term used in the question put to him at his deposition, not "collective bargaining agreement"—governing only the four employees with whose pension benefit he was concerned at the time. Contrary to the Union's position, Capozza has submitted evidence that Joy made false representations and concealed the Agreement before Joseph A. Capozza, Jr. signed the Agreement, which is the relevant time. *See, e.g.,* Capozza SMF II ¶¶ 23, 25–27; Capozza SMF I ¶¶ 29–34 ("Joy assured Capozza that the agreement ... would cover union benefits for the four union members and no one else;" "Joy suggested that there was no need for review of the rest of the agreement before execution and that he would send it to the company at a later time;" "Joy told Capozza that this document related to their agreement concerning the four union members;" etc.)

Capozza disputes the evidence submitted by the Union in support of its contention that Capozza acted in accordance with the terms of the alleged agreement. Joy SMF ¶¶ 8–10; Capozza Responsive Joy SMF

¶¶ 8–10. Its citations to the summary judgment record in support of its denials and qualifications of these paragraphs of the Union's statement of material facts are sufficient to prevent the entry of summary judgment on this basis. Finally, the evidence cited by the Union in support of its argument that Joseph A. Capozza, Jr. could not have reasonably relied on any misrepresentation made by Joy may well address Mr. Capozza's credibility, but it cannot establish that any reliance was unreasonable as a matter of law. In addition, much of that evidence, Joy SMF ¶ 5, is appropriately qualified or denied by Capozza, Capozza Responsive Joy SMF ¶ 5.

The Union is not entitled to summary judgment on Capozza's fraud claim (Count I of the amended complaint).

*3. Joy as Individual Defendant.* Joy argues that he is exempt from individual liability on Capozza's claims because he was acting at all relevant times as an agent of a labor organization. Joy Motion at 13. This issue was also raised in the Union's earlier motion to dismiss, and I recommended that this portion of that motion be denied because it was not possible to draw an inference from the amended complaint that Joy was a member of the Union. Recommended Decision at 10–11. The Union has now submitted evidence that Joy is currently the president, secretary and treasurer of Local 1. Joy SMF ¶ 3; Capozza Responsive Joy SMF ¶ 3. There is also evidence in the summary judgment record that Joy was the business manager of the District Council at the time the signature page was executed. Capozza SMF I ¶ 19. Capozza now takes the position that such immunity is available to Joy only for claims brought under the federal Labor Management Relations Act and not for state-law claims such as those it asserts in this case. Plaintiff's Objection to Defendants' Motion for Summary Judgment ("Capozza Joy Opposition") (Docket No. 25) at 15–16.

The statute providing the immunity invoked by Joy does not appear on its face to be so limited.

> Any labor organization which represents employees in an industry affecting commerce ... and any employer whose activities affect commerce ... shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity .... Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

29 U.S.C. § 185(b). In an opinion construing this statute, the Supreme Court said its policy is that "the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it," and that this policy "cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 249, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (citation and internal quotation marks omitted). However, the claim at issue in that case was one brought under the Labor Management Relations Act, *id.*, making it difficult to judge whether the expansive language of the opinion may be extended to state-law claims against union members.

In the case law cited by Capozza, Capozza Joy Opposition at 15–16, the question whether union members or officials could be held individually liable for the claims asserted against them simply was not addressed.[5] None of the case law cited by

---

**5.** One of the opinions cited by Capozza, *Seritis v. Hotel & Rest. Employees & Bartenders*

the Union is determinative. The only cited case to discuss the issue, *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390 (9th Cir.1985), holds only that individual union members are shielded from liability for state tort claims by section 185(b) when those state-law claims are "brought in conjunction with a section 301 [29 U.S.C. § 185(a) ] breach of duty claim against a union," *id.* at 1400. *See also Suwanchai v. International Bhd. Of Elec. Workers*, 528 F.Supp. 851, 861–62 (D.N.H. 1981) ("The plain meaning of § 301(b) is that damages actions of any kind may not lie against individual union members in federal court;" only claim against individual defendants was brought under LMRA); *Navios Corp. v. National Maritime Union of Am.*, 236 F.Supp. 657, 663 (E.D.Pa.1964) ("To require individual union officers to respond in damages for their authorized acts, done on behalf of the union, under any theory of state law would be contrary to the national labor policy;" only LMRA claim asserted.) No such claim is brought by Capozza in this action.

Section 185(b) immunity was extended to an official of a union in a case in which the plaintiff alleged only state-law claims against him, *Universal Communications Corp. v. Burns*, 449 F.2d 691 (5th Cir.1971) (state-law claims of "wrongful conduct and malicious mischief"), but only because the allegations of the complaint demonstrated that the claims arose out of a labor dispute and would state a cause of action under the LMRA, *id.* at 692–93. Here, the specific allegations against Joy, all of which involve inducing Capozza to enter into a collective bargaining agreement, do appear to involve an unfair labor practice. Accordingly, I conclude that Joy is entitled to immunity under section 185(b) and the mo-

tion for summary judgment should be granted as to any claims against him.

### C. Jury Trial

■ The claims asserted by Capozza against the Union will be tried before a jury. Final Pretrial Order at 3. Capozza contends that it is also entitled to jury trial on the Fund's claim against it; the Fund and the Union disagree. *Id.* The Fund's complaint seeks recovery of the payments allegedly due solely pursuant to 29 U.S.C. § 1145. Complaint for Money Damages (Docket No. 1 in Case No. 01–130–P–H) ¶ 1. The enforcement mechanism for section 1145 is provided by 29 U.S.C. § 1132(g)(2):

> In any action under this subchapter by a fiduciary for or on behalf of any plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan [certain damages, interest, fees and costs] and
>
> (E) such other legal or equitable relief as the court deems appropriate.

This court has held in the past that jury trial is unavailable on the claims of plaintiffs who allege that they are beneficiaries of ERISA plans and seek payment of benefits. *McLaughlin v. Reynolds*, 886 F.Supp. 902, 908 (D.Me.1995); *Wilson v. Connecticut Gen. Life Ins. Co.*, 670 F.Supp. 52, 54 (D.Me.1987); *Strout v. GTE Prods. Corp.*, 618 F.Supp. 444, 445 (D.Me. 1985). The claims in those cases were brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

*Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35 (3d Cir.1991), is apparently the only reported decision that directly addresses the question whether a jury trial is

---

*Union*, 213 Cal.Rptr. 588 (Ct.App.1985), was withdrawn from publication by the California

Supreme Court, 213 Cal.Rptr. 588 (1985).

available under section 1132(g)(2) when a union and an ERISA fund seek payment of contributions allegedly due from an employer under a collective bargaining agreement. The Third Circuit held in that case that a jury trial is available. *Id.* at 38–40. The Fund contends that this holding is inconsistent with this court's holdings in *McLaughlin, Wilson* and *Strout,* Plaintiffs' Response to Defendant's Memorandum Re: Right to a Jury Trial (Docket No. 46) at 3–4, but those opinions are readily distinguishable. Seeking benefits under the terms of a plan from the trustee of the plan is an action equitable in nature; seeking payment of contributions by a employer under the terms of a collective bargaining agreement is an action sounding in contract, a legal claim. Contrary to the Fund's assertion, it is not seeking "plan enforcement" here. The issue is not how to interpret the terms of a plan but rather whether the defendant is subject to the plan at all by reason of an alleged contract, the existence of which the defendant denies.

The Fund argues in the alternative, without citation to authority, that trial of its claim against Capozza by a jury is contrary to the expressed intent of Congress that trustees of ERISA plans be able "to recover delinquent contributions efficaciously." *Id.* at 4–5. There is nothing inherent in trial by jury, as distinguished from a bench trial, that renders the Fund's potential recovery in this case significantly less efficacious.

My conclusion that Capozza is entitled to a jury trial on the Fund's claim is strengthened by the language of the Supreme Court in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), where, in discussing the right to a jury trial under the Age Discrimination in Employment Act, the Court noted that the statute at issue empowered a court to grant legal or equitable relief, as does section 1132(g)(2)(E), and that

> [t]he word "legal" is a term of art: In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial. Where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary. We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal," and intended that there would be a jury trial on demand to enforce [the relevant liability].

*Id.* at 583, 98 S.Ct. 866 (citations and internal punctuation omitted). The same is true in this case.

## IV. Conclusion

For the foregoing reasons, I recommend that (i) the motion of the Flynn plaintiffs for summary judgment (Docket No. 17) be **DENIED**; and (ii) the motion of the Joy defendants for summary judgment (Docket No. 20) be **GRANTED** as to all claims asserted against Richard N. Joy and otherwise **DENIED**. It is hereby **ORDERED** that jury trial will be provided on the claims of the Flynn plaintiffs against Capozza Tile Company. To the extent that I have not addressed all or any portion of the motions to strike found at Docket Nos. 42 and 48, they are **MOOT**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memoran-*

*dum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

April 29, 2002.